ALDERSON, Guardian, etc., v. CROCKER and others.

(*Circuit Court, N. D. Ohio, E. D.* April Term, 1886.)

MINES AND MINING CLAIMS—AUTHORITY OF AGENT.

    A banker who brought suit for advances made a mining company through its superintendent, acting as agent, was allowed to recover the amount, with interest; the superintendent having implied authority, unless limited by notices given him from the company, to give orders for such advances to persons who have debts against the company for labor and materials to run the mine.

At Law.

*Adams & Russel* and *W. L. Rice,* for plaintiff.

*Ranney & Ranney* and *Judge Solders,* for defendants.

WELKER, J., (*charging jury.*) There are several facts in this case about which there is no controversy between the parties. They are that in December, 1881, the defendants became interested in the Mt. Hope Mining Company, located in the state of California. James E. Lyons then had an arrangement with one of the defendants, Mr. Hutchinson, as to a part of his interest in the mine. It was then held by Hutchinson and himself by what was called a "mining bond." Mr. Lyons was part owner and the superintendent of the Pleasant Valley mine at the same time, and held that position until the first or fifth of August, 1882. During that time he acted as superintendent of the Mt. Hope mine, as well as that of Pleasant Valley. Ceasing his superintendency of the Pleasant Valley mine in August, 1882, he became the superintendent and agent of the Mt. Hope mine alone.

From the time the defendant became interested in the Mt. Hope mine until about the first of November, 1882, the parties were engaged in the development of the mine, and in erecting a stamp-mill, and the necessary apparatus and processes to turn out gold bullion. Mr. Lyons, who was a miner and resident of California, was the agent and superintendent of the owners, and had charge of it. The defendants all resided at Cleveland, Ohio; they, however, visiting the mines at different times. On the first of November, 1882, the stamp-mill was completed, and set to work. On the thirtieth of January, 1883, the defendants obtained the legal title to the mine by proper deeds. On the first of November, 1882, Lyons ceased to have any interest in the mine, but he continued to act as superintendent of and had charge of the mine for the defendants, and, as such, carried on its operations until about the eighteenth of August, 1883, when he left the mine, and one of the defendants, Mr. Pierson, then took charge of it for the defendants.

The plaintiff was a merchant and a banker at Placerville, some 30 miles from the mines. The account of the plaintiff, as guardian, upon which this suit is brought, commenced on the first of February, 1883, and closed on the thirteenth day of September, 1883, and consists of charges against the defendants for money paid divers persons for the use of the defendants, and also of credits of bullion deposited, leaving a balance at its close of $12,979.14 against the defendants, for which the plaintiff asks judgment. All of the items of the account, up to the eighteenth day of August, 1883, were made by Lyons, the superintendent. Those paid afterwards were at the instance of Pierson, the manager for the defendants. Mr. Lyons, as agent of the Pleasant Valley mine, and also of the Mt. Hope, commenced an account with the plaintiff about the thirteenth of August, 1881, and

continued it until the commencement of the account sued upon; the plaintiff claiming, however, that after the first of August, 1882, it was all the account of the Mt. Hope mine. The defendants deny their liability upon the plaintiff's account; and you are to determine that issue under the law given you, and the facts of the case.

One of the first questions of law to be determined is the authority of Lyons, as the agent and superintendent of the defendants, placed in charge of the mine, in reference to incurring this liability to the plaintiff in the operation of the mine for them. As a general principle, an agent has all the necessary authority to transact the business of the principal,—the same as that of the principal himself,—and to make all contracts and transactions within the scope of the business to be transacted by the agent. But in those' mining partnerships and transactions the authority of the agent is somewhat restricted, and not so broad as in general agencies. Mr. Lyons, as the agent and superintendent of the defendants, had no implied general authority to borrow money to carry on the mines, and could only do so by express authority of the defendants. But, as such agent, he had implied authority to bind the firm, the owners, in the employment of labor and materials to run the mine, and incur, if necessary, debts for that purpose; and, incidental to such authority, he could execute and deliver to employes, or persons furnishing materials necessary to run the mine, written evidences in the form of memorandums, orders, or checks for such amounts as might be due them, in such manner as was usually done by superintendents under like circumstances; and, if the plaintiff purchased or cashed the checks or orders so given by Lyons in the usual course of his business as a banker, he obtains thereby a right to recover of the defendants the amounts so paid in good faith for said orders and checks, in the form of action adopted in this case. This authority may be acquiesced in by the defendants if they had knowledge of such course of business and checks being made, and made no objection thereto, if such be the fact.

This implied power of Lyons may be determined or limited by notice given him by the defendants in reference to such payment of orders. If it appear in the evidence that the defendant Crocker, for the other defendants, notified the plaintiff at any time that he must not allow their agent, Lyons, to overdraw the account with him, then, after such notice, the plaintiff would have no right to recover for such advancements afterwards made, if the orders made such overdraft, as that would terminate the implied authority of Lyons to make orders and checks, and the plaintiff's right to pay them, unless there was a sufficient deposit to meet them.

It was the duty of the plaintiff, after finding the account was largely against the agent, to make reasonable inquiry of the defendants, or some of them, as to their consent for the payment of the orders and checks drawn by Lyons without sufficient deposit to meet them; and if, on such inquiry, Mr. Crocker, for the other defendants,

gave the plaintiff the right or gave him to understand that Lyons was to be allowed to overdraw this account with the plaintiff, then, after that permission, the defendants would be liable for such overdraft, to the extent of the limits given in the permission, and not substantially beyond it; but it would not change their liability on previous payments, as before stated to you.

The fact whether Lyons, the agent of the defendants, honestly applied the proceeds of the mine for its benefit, or in what way he did so, does not affect the rights of the plaintiff, if the items sued upon were paid and furnished by the plaintiff, with the proper authority of Lyons to so transact the business.

Whether the account sued upon was carried on in the books in the individual name of Lyons, or that of the Mt. Hope Mining Company, is not material, if, as a matter of fact, the account was that of the mining company; and the evidence must satisfy you that it was the account of the mining company, and not Lyons' individual account outside of the operations of the defendants' mine. In reference to this it is proper to examine the books and evidence, and see when the mining company was inserted in the account, and ascertain whether the credit was in fact given to Lyons alone, or the mining company.

The agent, Lyons, had no implied authority to bind the defendants by the execution of the $7,500 note to the plaintiff, and could only do so by express authority, and no such authority is claimed by the plaintiff. If the plaintiff took this note from Lyons as his individual note,—as actual payment to him of that amount of the account,—and so credited the same on the account, it would be a payment thereon to that extent; but, if the note was not so taken as payment in fact, it would not make such payment, although credited upon the account.

Checks and orders drawn by Lyons on the plaintiff, payable to himself, and paid to him personally by the plaintiff, without money on deposit to meet them, would be borrowing money, for which he could not make the defendants liable without express authority being shown; but, if shown to have been paid to persons who had debts against the company for labor, etc., and not to Lyons himself, such checks and orders would be the same as others heretofore referred to.

The statements of O. D. Crocker do not bind the defendants, unless it be shown that he was their agent in the matter about which the statement was made. If he was the agent of the corporation formed in 1884, and not of the defendants, he could not affect the defendants by any statements about their business.

That part of the plaintiff's account sued upon, paid by him after the eighteenth of August, 1883, when Lyons left the employ of the defendants, if paid under the direction of Pierson, as the agent of the other defendants, gives the plaintiff the right to recover such amount so paid in this action; and this liability is not disputed by the defendants.

The fact whether the defendants knew of the guardianship of the plaintiff in the transactions with the plaintiff is not material in this action, so that he show and establish his representative character.

The burden is upon the plaintiff to show the amounts and items claimed to have been paid by him and stated in his account, to enable him to recover for them. He can only recover such as he shows he has so paid under these directions.

Now, take this case, examine carefully the evidence, and apply the facts so established, with these general principles of the law, and make such finding as will satisfy you of having correctly decided the case. If you find for the plaintiff, you will give him interest, at the rate of 7 per cent., on the balance of the account, from the time payments were so made to the first day of the present term.

Verdict for the plaintiff.